Filed 4/4/23 P. v. Thomas CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B313932 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA023276) |
| v. | |
| MICHAEL E. THOMAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge. Reversed.

Law Office of Christine M. Aros and Christine M. Aros, under appointment by the Court of Appeal, Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Acting Supervising Deputy Attorney General, and Stephanie C. Santoro, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

In 1993, a jury convicted defendant Michael E. Thomas of second degree murder (Pen. Code, § 187, subd. (a)),[1] and found that he personally used a firearm (§ 12022.5, subd. (a)) and that a principal was armed with a firearm during the commission of the offense (§ 12022, subd. (a)(1)).  We affirmed the judgment.  (*People v. Thomas* (June 26, 1995, B083758 [nonpub. opn.] (*Thomas I*).)  In 2019, defendant filed a petition for resentencing under former section 1170.95, now section 1172.6.[2]  After the trial court denied the petition, this court reversed the judgment and remanded the matter for the appointment of counsel, submission of briefing, and further proceedings. (*People v. Thomas* (May 22, 2020, B297168) [nonpub. opn.] (*Thomas II*).)

On remand, the trial court found defendant made a prima facie showing of eligibility and issued an order to show cause why relief should not be granted.  After an evidentiary hearing, the court denied the petition. Defendant appeals from that ruling.  Concluding that an improper standard of proof was applied at the hearing, we reverse the denial of defendant's petition for resentencing and remand for a new evidentiary hearing to be conducted.

---

[1]    All statutory references are to the Penal Code unless otherwise stated.

[2]    Effective June 30, 2022, section 1170.95 was renumbered 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  Hereafter we will refer to the statute by its current designation, section 1172.6.

## FACTUAL BACKGROUND[3]

1. *Murder of James Adams*

In March 1993, James Adams was shot to death in an apartment he shared with Gloria Jean Sturdivant and several children. Adams bought and sold marijuana from the apartment, and Sturdivant helped him. On the night of March 10, 1993, Cameron Clark, one of Adams' regular customers, came to the apartment and said he wanted a half-ounce. Sturdivant, who answered the door, told him that Adams was not ready, but that Clark could wait. Sturdivant opened the screen door for Clark, who grabbed it, pushed Sturdivant away, and kept the door open to allow three masked men holding firearms to enter. One of the masked men pushed Sturdivant, pointed a gun at her head, and told her to get on the floor while Clark and the other two went towards the bedrooms. Sturdivant, who had known defendant for more than a year and had regularly heard his voice, thought she recognized the masked man's voice as defendant's.

While the masked man was guarding Sturdivant, Clark called out that Adams was too strong for him and that he needed help. The masked man ran towards the bedrooms. Clark then said, "Somebody shoot this son of a bitch," and the masked man responded, "[T]hat's not what we came here for." Sturdivant heard a shot, then a pause, then two more shots before she ran outside, where she heard more shots. When police officers arrived, they found Adams lying on the floor of the master bedroom, which had been ransacked. There was a large quantity of marijuana in the bedroom. The police recovered a .38 caliber revolver containing five live rounds and one

---

[3]     On May 6, 2022, we granted defendant's motion to augment the record on appeal to include the trial record in *Thomas I*. Our summary of the factual background is based on the trial record.

spent round, a fully loaded .45 caliber semiautomatic pistol, an expended casing from a .22 caliber long rifle, and a .9 millimeter gun. The .38 caliber revolver belonged to Adams, and Sturdivant recognized the .45 caliber pistol as the firearm used by the masked man who forced her to the floor.

The police also recovered a ski mask with a hole above the left eye, and a similar hole a few inches away from the first hole; there was fresh blood around the first hole. They also found a pattern of blood spots on the staircase leading from the apartment. They canvassed nearby hospitals, where they found defendant being treated for a gunshot wound located in the area that the person wearing the ski mask would have been hit; the exit wound also was in the same area as the other hole in the ski mask. The blood on the ski mask was consistent with defendant's blood type. Defendant is African-American, and the frequency of his blood type for African-Americans in Los Angeles County was 1 out of every 2,655 people.

### 2. Trial

Defendant was charged with a single count of murder, along with two firearm allegations. The prosecutor tried the case under a felony murder theory. The defense attempted to show that defendant was not involved in the incident at all—defendant testified that he was at home at the time of the murder, and that he had been shot in a drive-by shooting—or, if he was involved, the underlying crime was not a robbery, burglary, or kidnapping.

The trial court instructed the jury on aiding and abetting (CALJIC No. 3.01), murder (CALJIC No. 8.10), malice (CALJIC No. 8.11), felony murder (CALJIC Nos. 8.21, 8.27), second degree murder (CALJIC Nos. 8.71, 8.74), and burglary, robbery, and kidnapping (CALJIC Nos. 14.50, 9.40, 9.50).

During his closing argument, the prosecutor stated that in addition to felony-murder, the facts of the case also supported a finding of second degree murder under an implied malice theory. He explained that "[u]nder implied malice second degree, what the law says there is—there is no intent to kill necessarily. There is again we all agree under fairness to Mr. Thomas, the only reasonable interpretation of the facts was that he did not go there to kill . . . Mr. Adams. No evidence of that. The law says that if you participate in an act that is inherently dangerous to human life and you participate either as a principal or an aider and abett[o]r in doing something that is dangerous that's going to have a strong possibility of hurting someone or causing the death and that act leads to someone's death, you're responsible for second degree murder."

The jury found defendant guilty of murder in the second degree, and found to be true allegations that he personally used a firearm and that a principal was armed with a firearm in the commission of the offense. The trial court sentenced defendant to 15 years to life in prison on the second degree murder. In addition, the court imposed a four-year consecutive term for the personal use of a firearm allegation; the court imposed the midterm rather than the high term because there was evidence that defendant had tried to stop the actual shooting, and the court believed that defendant never intended that Adams would be shot.

## PROCEDURAL HISTORY

In February 2019, defendant filed a petition for resentencing under section 1172.6. The trial court summarily denied the petition. On appeal, a different panel of this court held that defendant's ineligibility for resentencing was not established as a matter of law. Therefore, on remand,

5

the trial court was directed to appoint counsel for defendant, allow the parties to submit briefing, and determine whether to issue an order to show cause.

On remand, counsel was appointed for defendant and the parties submitted briefing. After reviewing the briefs, the trial court found a prima facie showing had been made and issued an order to show cause why the relief prayed for in the petition should not be granted.

The court subsequently conducted an evidentiary hearing on the 1172.6 petition. At the outset, the court stated: "And I do understand my role now in this instance is as an independent fact-finder and I understand the People's burden to prove beyond a reasonable doubt that the defendant or petitioner could have been convicted under the laws as they are now under Penal Code sections 188 and 189." Defense counsel indicated he "agree[d] with the court's viewpoint on the standard of review at this point." The prosecutor proceeded to argue that defendant could be guilty of murder beyond a reasonable doubt as an aider and abettor under the implied malice theory or alternatively, under the current felony murder rule.

Following the arguments by the prosecution and the defense, the court stated, "I believe that the evidence was quite strong to show that the defendant could be found guilty of felony murder based upon the facts that we have seen that are discussed." The court further found, "I do believe and I do find beyond a reasonable doubt that on the facts that have been discussed by both counsel, that the defendant could have been found guilty of second degree murder under implied malice theory." It repeated that it found "beyond a reasonable doubt this jury could have convicted the defendant of murder based upon our Penal Code sections 188 and 189 as they are today." The court denied the petition, and defendant timely appealed.

6

We requested supplemental briefing from the parties to address the following issue: "Given recent amendments to Penal Code section 1172.6, subdivision (d)(3), clarifying the prosecution's burden is 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019,' whether the trial court committed reversible error by concluding the defendant *could have been found guilty* beyond a reasonable doubt, as opposed to the court itself finding the defendant guilty beyond a reasonable doubt, on theories of aiding and abetting implied malice murder and/or major participant liability. (See Senate Bill No. 775 (2021-2022 Reg. Sess.); *People v. Clements* (2022) 75 Cal.App.5th 276, 296–298.)" Both parties submitted letter briefs addressing the issue.

## DISCUSSION

### 1. *Governing Legal Principles*

Through Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 1), the Legislature limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971; accord, § 189, subd. (e).) Senate Bill No. 1437 also added former section 1170.95 (now section 1172.6), which created a procedure whereby individuals convicted of murder under a now-invalid theory based on felony murder, the natural and probable consequences doctrine, or any other theory for which malice is imputed based solely on a person's participation in a crime may petition for vacatur of their convictions and resentencing. (§ 1172.6, subd. (a).)

7

Where, as here, the petitioner has made a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and then hold a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c)-(d)(1).) At the hearing, the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law; the parties may also offer new or additional evidence to meet their respective burdens. (§ 1172.6, subd. (d)(3).)

As clarified in amendments that took effect on January 1, 2022, the burden of proof is on the prosecution "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . . A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3); see Stats. 2021, ch. 551, § 2.)

The trial court conducted the section 1172.6 evidentiary hearing prior to the clarification of the language regarding the standard of proof in section 1172.6, subdivision (d)(3). At the time of the hearing, there was a split of authority as to whether a court conducting such a hearing should adjudicate the petition as an independent fact-finder, or instead apply a substantial evidence review standard. (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).) In reviewing for substantial evidence, the court decides only "'whether, on the entire record, a rational trier of fact *could find* the defendant guilty beyond a reasonable doubt.'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206, italics added.) In *People v. Duke* (2020) 55 Cal.App.5th 113 (*Duke*), the Court of Appeal adopted that substantial evidence standard

8

for section 1172.6 evidentiary hearings, but our Supreme Court vacated and depublished *Duke* in the fall of 2021. (See *People v. Duke* (Cal. 2021) 286 Cal.Rptr.3d 703.) The vacation of *Duke*, and the Legislature's recent amendment to section 1172.6, resolved the split of authority and made plain that under section 1172.6, subdivision (d)(3), the trial court must act as an independent fact-finder "to determine beyond a reasonable doubt whether [a] defendant *is* guilty of murder under a valid theory of murder." (*Garrison, supra,* 73 Cal.App.5th at p. 745, italics added; see Stats. 2021, ch. 551, § 2.)

  2. *Discussion*

    As stated above, when the trial court conducted the hearing on defendant's section 1172.6 petition in July 2021, *Duke* had not yet been vacated and the Legislature had not clarified the standard of proof for such a hearing. It appears the trial court followed *Duke* and applied a substantial evidence review. Thus, the trial court found "beyond a reasonable doubt this jury *could have convicted* the defendant of murder based upon our Penal Code sections 188 and 189 as they are today." Specifically, it stated, "I do find beyond a reasonable doubt . . . that the defendant *could have been found* guilty of second degree murder under implied malice theory" and that "the defendant *could be found* guilty of felony murder." (Italics added.) However, as discussed above, the Legislature has now clarified that "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) Rather, the prosecution is "required to establish the defendant is guilty under current law *as a matter of fact* and beyond a reasonable doubt." (*People v. Clements, supra*, 75 Cal.App.5th at p. 296; see § 1172.6, subd. (d)(3) [prosecution must "prove,

9

beyond a reasonable doubt, that the petitioner is guilty of murder" under a currently-valid theory].) The factual question whether a defendant committed murder under a still-valid theory must be resolved by the trial court, with the required factual finding made beyond a reasonable doubt. In this case, although the trial court indicated it understood its role was to act as an independent fact-finder, its repeated statements that it found the defendant "*could be found* guilty" by a jury suggest that it did not apply the proper standard of proof.

The Attorney General argues that despite the trial court's "somewhat imprecise" language, "there is no plausible doubt" the court actually found defendant was guilty of murder under a valid theory beyond a reasonable doubt. The Attorney General contends defense counsel's failure to object demonstrates there was no dispute that the court understood and applied the proper standard, and the Attorney General cites the general presumption that the trial court followed applicable law. "Evidence Code section 664 provides that '[i]t is presumed that official duty has been regularly performed' and scores of appellate decisions, relying on this provision, have held that 'in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law.'" (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) However, that presumption does not apply where, as here, "the law in question was unclear or uncertain when the lower court acted." (*People v. Jeffers* (1987) 43 Cal.3d 984, 1000; see *People v. Esparza* (2015) 242 Cal.App.4th 726, 742 [rejecting prosecution's contention that trial court was presumed to have known and applied the proper burden of proof in a recall and resentencing hearing, where the law was not yet clearly established], abrogated on another ground by *People v. Cordova* (2016) 248 Cal.App.4th 543.) Given the unsettled state of the law on the proper

10

standard of proof at the time of the hearing in this case, we cannot overlook the language used by the trial court or presume that the court in fact applied the standard that the Legislature clarified only later.

Moreover, we disagree with the Attorney General that the court's erroneous application of a substantial evidence standard at the evidentiary hearing was harmless. This case is distinguishable from *Garrison, supra*, 73 Cal.App.5th at pages 745–746, in which the trial court's application of a substantial evidence review was deemed harmless. In *Garrison*, the defendant was convicted of murder and admitted he personally used a firearm. (*Id.* at p. 745.) The evidence established that only one person was the shooter and that the "only use of the handgun was to shoot [the victim]." Because the defendant admitted that he personally used a firearm, the "*only* conclusion consistent with [his] admission" was that he was the "actual killer." (*Id.* at p. 747.) Therefore, he was "ineligible for relief as a matter of law." (*Id.* at p. 745.) By contrast, in our case there is no suggestion the defendant was the shooter, and nothing disqualifies defendant as a matter of law from obtaining relief under section 1172.6. He has a statutory right to an evidentiary hearing at which the trial court applies the correct, more stringent standard of proof. (See § 1172.6, subd. (d)(3).) Affirming the trial court's order based on a finding of harmless error would improperly bypass his right to a proper trial court hearing in the first instance.

//

//

//

//

11

## DISPOSITION

The order denying the petition for resentencing under former section 1170.95 is reversed.  The case is remanded for a new evidentiary hearing applying the correct standard of proof as set forth in this opinion.  We express no opinion regarding defendant's entitlement to relief following that hearing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STONE, J.*

We concur:


CURREY, Acting P. J.


COLLINS, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.